No. 16,975.

STRECKER *v.* GOERTZEN.
(265 P. [2d] 696)

Decided January 18, 1954.

Messrs. GORDON & GORDON, BARBARA LEE, Messrs. GOULD & MITCHELL, for plaintiff in error.

Messrs. HAM, JOHNSON & SHINN, Messrs. HUTCHISON, VANCE, FLEMING, FLEMING & VANCE, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS is an action instituted by a vendor for specific performance of a contract for sale of real estate. Complaint was filed in the district court of Prowers county on the 6th day of July 1950. Following some preliminary orders, defendant, who now is defendant in error, filed his answer and counterclaim on October 18, 1950, to which a reply and answer was filed on January 19, 1951. Defendant filed an amended answer and, after hearing, and on the 16th day of June, 1951, the court entered its findings of fact and conclusions of law and ordered judgment entered thereon, which was adverse to plaintiff, who, in due course, obtained writ of error for reversal of the judgment.

On September 14, 1948, plaintiff in error, herein referred to as plaintiff, as first party, entered into a contract with defendant for the sale of the west one-half (W. ½) and the southeast quarter (S.E. ¼) of section twelve (12), township eighteen (18) south, range forty-three (43) west of the 6th P. M., situated in Kiowa county, Colorado, for the sum of $22,000. $2,000 was paid on the signing of the contract and arrangements were made for payments of the balance, ending August 1, 1949, with interest at the rate of five per cent from the date of the contract, second party to receive immediate possession. The contract contained other conditions, but all that is important in the present case is that the first

party or plaintiff covenated and agreed to deliver to second party a good and merchantable title, and if unable to do so, to refund all monies received from the second party. Upon examination of such abstracts as were furnished, defendant, through his counsel, advised that the title was not merchantable and claimed that plaintiff did not have title to some of the land contracted for; however, on February 20, 1950, plaintiff tendered a general warranty deed to defendant containing a more minute description of the property than was contained in the contract of sale.

Defendant took possession on the date of the contract and had planted and harvested two crops of wheat up to the time of the trial; however, it was stipulated in open court on January 23, 1951, that defendant proceed to farm the premises involved, and in doing so, neither he nor plaintiff would waive any rights or claim against the other, and particularly that defendant reserved the right to claim reimbursement for a fair and actual expense in farming the land under the stipulation in the event the contract was cancelled.

Plaintiff filed the complaint, as before stated, for specific performance, claiming that he had performed by tendering the deed. Defendant denied performance on the part of plaintiff and alleged in a separate defense that plaintiff had failed and refused to perform the agreements and stipulations on his part to be performed under the contract; that defendant has been at all times ready, able and willing to make the payments according to the contract upon performance by plaintiff of the things agreed by him to be performed; further alleged that plaintiff never had received abstracts to all of the property; that defendant had never been able to have said abstracts of title approved by any attorney as to all of said property; and by counterclaim prayed for a return of the $2,000 down payment with interest thereon; for compensation and reimbursement of his expenses in

farming the premises described in the agreement; and for his costs.

Much of the difficulty concerning the failure of plaintiff to satisfy defendant's counsel as to the merchantable title is brought to focus by defendant's amended answer, wherein he alleged that plaintiff did not own the land between lots three and four on the north, and lots nine and ten on the south in section 12, township 18, range 43; it further is alleged that the land belonged to the United States because of an error in the original survey in which it was shown that the land thus questioned was meandered as a lake; that the land consisted of some three hundred acres; that if it were a lake that it was owned by riparian owners; that such riparian owners had not been made parties to a quiet-title action which plaintiff prosecuted to a decree after the contract herein was entered into; and that therefore the quiet-title action was void for this reason and other reasons not necessary to detail. The testimony tends to show, and did show, that there never was a lake, as such, covering this ground. In aid of defendant's general defense, it is shown that on October 20, 1948, attorneys representing defendant notified counsel for plaintiff that there were 143.54 acres in the meandered lake with title in the Government and demanded a return of the $2,000 down payment made by defendant on the purchase price, plus the expense of drilling in 155 acres of wheat, and upon receipt of the amount demanded, defendant would release possession of all of the property covered by the contract. The testimony was to the general effect that over many years past, probably fifty years or more, that there was occasional water in this depression, but never to the extent that a lake shoreline was, or could be, established. Witnesses, some who were born and raised in the community, and others who had lived there many years, testified to the general effect that six months at the outside was the longest time that this area ever was covered by water.

■■ ■ It is well settled, and about which there seems to be no dispute, that the traverse of the margin of a *permanent,* natural body of water is termed the meander line. It is equally as well settled that the existence of a permanent body of water is an essential to a proper meander line; it then follows that if the area in question was not covered by a permanent natural body of water, then the meander line was improperly established by the survey. If a lake was in existence at the time of the survey, but was not in existence at the time of the issuance of the patent, the patentee then acquired only to the meander line shown on the survey. In the case of *Gauthier v. Morrison,* 232 U. S. 452, 34 Sup. Ct. 384, 58 L. Ed. 680, it is said, in substance: A tract of agricultural land susceptible of cultivation, but which by wrongful act or error of the surveyor was omitted from the survey, and was designated and meandered as a lake, was as much public land after the survey, and as much within the operation of the settlement laws, as if its true character had been reported by the surveyor. It merely was left unsurveyed.

■ It was competent for defendant in this action to show that at or near the time of the survey and since, there was not a natural body of water on this ground, and it was equally competent to show that at the time the patent was issued there was no such natural body of water. The evidence in the case indicates the general nature of this ground and the varying times when it was covered by water for short periods. We glean from the statement of argument, the points on which plaintiff seems to rely, and they are too numerous to detail when it is unnecessary for the disposition of the case, since the entire matter is controlled by the requirements, or lack thereof, for specific performance. Objection is made to the finding of the trial court that defendant, while in possession, could obtain rescission of the contract. Such contention is easily disposed of when we consider the fact that defendant was in possession under the contract

after a down payment of $2,000 and he made counter-claim for rescission after plaintiff had brought this action for specific performance. By the very nature of things, he was in a different position from that which he might have been in had he commenced an action for rescission; further, his continued possession was under a stipulation, and therefore he was not called upon to tender possession as such, because he was there under the equal possession of plaintiff by the stipulation and was farming under the terms of this stipulation entered into in open court. He was not called upon to abandon his rights in order to assert a counterclaim for rescission.

The controlling condition of the contract was that plaintiff would furnish defendant a merchantable title, and unless he was able to do so, then his action for specific performance must fall. Here it appears that as to the land, the boundary of which was the meandering of the lake, he not only had a defective title, but apparently no title whatever, and regardless of the correctness of the arguments, pro and con, as to whether he had title or not, it, at least, was doubtful, and therefore he could not force the conditions of the contract onto defendant, who was unwilling to accept a doubtful title. The contract provided that the abstracts be examined and approved by defendant. The testimony discloses that defendant was unable to have any attorneys hold that the title was merchantable. It would unduly lengthen this opinion to go into the details of the defects of the quiet-title decree, which plaintiff obtained, other than to say that the ob-jections raised thereto are apparently well founded and were so considered by the trial court.

The trial court made a specific finding that the title to the land involved never was approved by de-fendant's attorney as being a merchantable title, and further found from conflicting evidence that the lake herein mentioned as Lake Albert was not, and is not, a lake, even though it was meandered as such by the gov-ernment surveyor; that it was not a lake at the time the

patents to the land involved were issued, and subsequent thereto; that the meanderings of the area as a lake was a mistake, and therefore the title to the land embracing the lake is still in the United States Government; that since the title to the land is not merchantable, plaintiff cannot rightfully ask for specific performance of the contract; that there is no direct evidence that the United States Government would not claim any interest in the land embraced within the meander lines of said lake. The court entered judgment, giving plaintiff a period of four months in which to obtain a patent or other proper conveyance from the government of the land embraced within the meander lines of said lake; to tender a deed; then defendant to pay the balance of the purchase price as provided in the contract; and upon the failure of plaintiff to meet the requirement within the four-month period, defendant then would be relieved from any further obligation to purchase the land; and that defendant was entitled to a judgment in the sum of $2,000, less the fair rental value of the land from September 14, 1948 to the date of judgment; provided, however, that if the fair rental value of said land is more than $2,000, then plaintiff be entitled to a judgment against defendant for any excess over $2,000. Subsequent to the entry of this finding and judgment, plaintiff offered to prove that he had sought to obtain patent to the premises, which offer was refused by the court, and the court found that plaintiff had not complied with the findings of fact and conclusions of law and the order entered thereon on June 15, 1951, and continued any further hearing to January 8, 1952, for the purpose of a hearing on an accounting between the parties. After such hearing, in which the court heard testimony as to the amount and value of crops and other items involved, it found that defendant was entitled to judgment against plaintiff in the sum of $1,773.79, the amount paid by defendant to plaintiff on the purchase price of said lands with interest thereon after the setoff

allowed plaintiff for the fair rental value of land while defendant was in possession.

We believe the findings of fact and conclusions of law and the judgment entered thereon by the trial court are correct; the judgment therefore is affirmed.